**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOLLY DOBROSKY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-2612 |
| | : | |
| JENNIFER LOMETTI, DETECTIVE | : | |
| PETER LANGE, WILLIAM R. | : | |
| MURPHY | : | |

## MEMORANDUM

KEARNEY, J.                                                    December 4, 2023

A local mother exonerated of a criminal conviction in Bucks County for interfering with a shared child custody order by taking her child to Florida now sues the prosecutor, detective, and social services worker who worked on and then testified at the jury trial leading to her now-vacated conviction. She pro se claims these three state actors violated her constitutional rights by fabricating evidence and maliciously prosecuting her. The mother timely sued within two years. But she does not plead facts overcoming the absolute immunity afforded to the prosecuting attorney for his trial and post-trial advocacy or to the social services worker for allegedly negligent investigative techniques and the accuracy of her trial testimony. The mother also does not plead facts stating claims against the detective and her claims challenging the accuracy of the detective's trial testimony are barred by absolute immunity afforded to trial witness testimony. We grant the state actors' motions to dismiss the amended Complaint without prejudice to the mother (a former licensed attorney) timely pleading facts in a second amended Complaint overcoming these deficiencies before we close the case.

## I.    Alleged pro se facts.

Holly Dobrosky's then-four-year-old daughter reported her father (and Ms. Dobrosky's ex-husband) sexually abused her nine years ago.[1] Bucks County Children & Youth Social Services Agency investigated the child's report of sexual abuse in early 2015 but found the allegations unfounded.[2]

Ms. Dobrosky and her husband began divorce proceedings in mid-2015.[3] The two agreed on a shared custody arrangement and the state court entered a custody order on July 30, 2015.[4] Ms. Dobrosky's daughter again reported sexual abuse by her father in November 2015.[5] Ms. Dobrosky responded by seeking a protection from abuse order on her daughter's behalf granted by the Honorable Robert Baldi in the Bucks County Court of Common Pleas.[6] Jennifer Lometti from the Bucks County Children & Youth Social Services Agency began an investigation.[7] Ms. Lometti ultimately concluded the daughter's report of abuse unfounded.[8] Ms. Dobrosky disagreed with Ms. Lometti's conclusion, believing the finding violated the Commonwealth's Department of Human Services policies and Pennsylvania law.[9] The Bucks County Court of Common Pleas vacated the temporary protection from abuse order and allowed the child to resume contact with her father in November 2015.[10]

Ms. Dobrosky became concerned with her daughter's increasing pleas to avoid being in the presence of her father in mid-2016.[11] Ms. Dobrosky decided to unilaterally "withhold" custody of her daughter from the father notwithstanding the July 30, 2015 shared custody order.[12] Lower Makefield Detective Peter Lange prepared an Affidavit of Probable Cause on July 2, 2016 seeking to file a criminal complaint against Ms. Dobrosky for interfering with the custody order.[13] Detective Lange did not include the child's report of sexual abuse during a November 2015 forensic interview.[14]

Ms. Dobrosky responded three days later by taking her daughter from Bucks County to Florida.[15] Ms. Dobrosky soon learned the Bucks County Court issued a warrant for her arrest for violating its July 30, 2015 custody order.[16] Ms. Dobrosky returned to Pennsylvania without her daughter to meet with a criminal defense attorney to prepare to surrender to Bucks County authorities on the arrest warrant.[17]

Bucks County Judge Baldi found Ms. Dobrosky in contempt of the July 30, 2015 shared custody order and granted the father sole legal and physical custody of the child on July 25, 2016.[18] The United States Marshal Service recovered the child in Florida and arrested Ms. Dobrosky on August 2, 2016.[19]

### The Commonwealth prosecutes Ms. Dobrosky and a Bucks County jury convicts her.

The Commonwealth charged Ms. Dobrosky with interfering with the custody of a child.[20] Assistant District Attorney William R. Murphy prosecuted the criminal action against Ms. Dobrosky beginning with a September 6, 2016 preliminary hearing.[21] Trial began in Bucks County on March 17, 2017.[22] Ms. Dobrosky defended the charge by asserting her conduct necessary to protect her daughter from the danger posed by the father, a statutory defense to the charge.[23]

The jury found Ms. Dobrosky guilty.[24] Attorney Murphy moved for, and Bucks County Judge Rea Boylan granted, a no-contact order precluding Ms. Dobrosky from contact with her child and the child's father.[25] The Commonwealth released Ms. Dobrosky on bail on March 22, 2017.[26]

In April and May 2017, Attorney Murphy moved to revoke Ms. Dobrosky's bail believing she violated Judge Boylan's no-contact order.[27] Judge Boylan granted Attorney Murphy's motions and on June 19, 2017 sentenced Ms. Dobrosky to time served to twenty-three months

imprisonment with immediate parole, a consecutive five-year term of probation, and an order precluding her from having contact with her daughter.[28]

***Pennsylvania's appellate court overturned Ms. Dobrosky's conviction and the Commonwealth nolle prossed the charges against her on July 14, 2021.***

Ms. Dobrosky timely appealed from Judge Boylan's Order. The Pennsylvania Superior Court reversed Ms. Dobrosky's conviction and denied the Commonwealth's petition for reargument.[29] The Pennsylvania Supreme Court affirmed the Superior Court's reversal of Ms. Dobrosky's conviction on March 25, 2021.[30]

The District Attorney withdrew its prosecution of Ms. Dobrosky on July 14, 2021.[31]

***Ms. Dobrosky sued Defendants alleging they violated her civil rights by fabricating evidence and malicious prosecution.***

Ms. Dobrosky now sues Ms. Lometti, Detective Lange, and Assistant District Attorney Murphy alleging they fabricated evidence in violation of her Fourteenth Amendment right and a maliciously prosecuted her in violation of her Fourth Amendment right seeking damages.[32] Ms. Dobrosky sued Ms. Lometti and Detective Lange in their individual and official capacities.[33] She sued Attorney Murphy in his individual capacity only.[34]

## II.   Analysis

Detective Lange, Ms. Lometti, and Attorney Murphy move to dismiss Ms. Dobrosky's amended Complaint.[35] Detective Lange moves to dismiss Ms. Dobrosky arguing Ms. Dobrosky's claims are barred by the two-year statute of limitations; she fails to state a claim for fabrication of evidence and malicious prosecution; and he is entitled to qualified immunity and absolute immunity.[36]

Ms. Lometti and Attorney Murphy together move to dismiss arguing the claims are barred by the two-year statute of limitations; Ms. Dobrosky fails to state a claim for fabrication of

evidence and malicious prosecution; and they are entitled to qualified immunity, absolute immunity, and Eleventh Amendment immunity.[37] We address the motions to dismiss collectively.[38]

Congress through section 1983 allows suits against persons acting under color of state law for violating rights guaranteed by the Constitution or federal law.[39] To state a claim under section 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution or federal law; and (2) a person acting under color of state law committed the alleged deprivation.[40]

Ms. Dobrosky alleges Detective Lange, Ms. Lometti, and Attorney Murphy as state actors violated her Fourteenth Amendment right to due process by fabricating evidence and deliberate deception "before, during, and after" the March 2017 trial and for malicious prosecution in violation of the Fourth Amendment.[41]

Ms. Dobrosky may have a stand-alone fabricated evidence claim against a state actor under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood she would not have been convicted absent the fabricated evidence.[42] Ms. Dobrosky "must draw a meaningful connection between [her] conviction and the use of fabricated evidence against [her]."[43] To succeed on a deliberate deception claim, Ms. Dobrosky must allege the conduct "was so significant that it could have affected the outcome of the criminal case."[44]

Ms. Dobrosky may also bring a Fourth Amendment malicious prosecution claim under section 1983.[45] To state a claim for malicious prosecution, Ms. Dobrosky must allege "(1) [state actors] initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) [state actors] initiated the proceeding without probable cause; (4) [state actors] acted maliciously or for a purpose other than bringing [her] to justice; and (5) [she] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[46] Police officers

may be liable for malicious prosecution if they "conceal or misrepresent material facts" to prosecutors, fail to "disclose exculpatory evidence to prosecutors, mak[e] false or misleading reports to the prosecutor, omi[t] material information from … reports, or otherwise interfer[e] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."[47]

### A. Ms. Dobrosky's complaint is timely.

The state actors argue Ms. Dobrosky's complaint is untimely. We disagree.

The statute of limitations applicable to section 1983 claims in Pennsylvania is two years.[48] A claim under section 1983 accrues when a plaintiff knew or should have known of the injury on which her claim is based.[49] The statute of limitations for a fabricated evidence claim or malicious prosecution under section 1983 does not begin to run until the criminal proceedings against the plaintiff have terminated in her favor.[50]

Detective Lange, Ms. Lometti, and Attorney Murphy argue the two-year statute of limitations on Ms. Dobrosky's section 1983 fabricated evidence and malicious prosecution claims began to run when the Commonwealth moved to *nolle pros* the 2016 criminal action against her on July 13, 2021, but Ms. Dobrosky did not file her complaint until July 25, 2023. This is incorrect. The docket confirms Ms. Dobrosky filed her complaint on July 10, 2023, not July 25, 2023.[51] Ms. Dobrosky alleges the Commonwealth withdrew its prosecution against her on July 14, 2021.[52] She attaches an Order from Judge Boylan dismissing the criminal charges against her on July 14, 2021.[53] Accepting as true Ms. Dobrosky's well-pleaded allegations and drawing all reasonable inferences in her favor, the Pennsylvania General Assembly grants her two years from Judge Boylan's July 14, 2021 Order to file her complaint. She did so on July 10, 2023; her claim is timely.

Ms. Lometti and Attorney Murphy make an additional statute of limitations argument with regard to her fabrication-of-evidence claim.[54] They argue if Ms. Dobrosky's claims are based on testimony elicited by Attorney Murphy during the criminal trial, including alleged false testimony by Ms. Lometti, the statute of limitations began to run on March 20, 2017, the date the jury found Ms. Dobrosky guilty of the criminal charges against her *or* on June 19, 2017, the date of the court's sentencing order. Ms. Lometti and Attorney Murphy argue Ms. Dobrosky knew or should have known of false testimony and evidence at the time Attorney Murphy presented the evidence at trial. Beginning the limitations period from the time of the jury's verdict on March 20, 2017 or the court's sentencing order on June 19, 2017, Ms. Dobrosky did not file her complaint until over six years later and is untimely.

This is not the law. The Supreme Court four years ago held the limitations period for a fabricated evidence claim under section 1983 begins to run from acquittal and ***not*** from the time when the alleged fabricated evidence is used.[55] The Court reasoned a plaintiff cannot bring a fabricated evidence claim under section 1983 before a favorable termination of her prosecution.[56] The Court flatly rejected an approach imposing "a ticking limitations clock on criminal defendants as soon as they become aware that fabricated evidence has been used against them" as impractical, foisting onto a criminal defendant an "untenable choice" between letting their claims expire and filing a civil action against the prosecutor "who is in the midst of prosecuting them," and a parallel civil litigation runs counter to principles of federalism, comity, consistency, and judicial economy.[57] Ms. Lometti's and Attorney Murphy's argument is without merit.

We deny Defendants' statute of limitations arguments.

**B.  Ms. Lometti and Attorney Murphy are absolutely immune from liability.**

Ms. Lometti and Attorney Murphy argue they are immune from Ms. Dobrosky's fabricated evidence and malicious prosecution claims. Ms. Dobrosky sues Ms. Lometti in her individual and official capacities. Ms. Lometti asserts she is immune from liability under the Eleventh Amendment, qualified immunity, and absolute immunity. Attorney Murphy is sued in his individual capacity only. He asserts he is immune from liability under the Eleventh Amendment, qualified immunity, and absolute immunity.

The alleged offending conduct by Ms. Lometti and Attorney Murphy serves as the basis for both the fabricated evidence claim and her malicious prosecution claim. We conclude Ms. Lometti and Attorney Murphy are absolutely immune from liability and dismiss the claims against them in their individual capacities with prejudice.[58]

**1.  Assistant District Attorney Murphy is absolutely immune from liability on the plead facts.**

Prosecutors are absolutely immune from "prosecutorial functions."[59] We are directed by our Court of Appeals to apply a "functional test" to a prosecutor's activities rather than his or her status as a prosecutor.[60] The functional test "separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'"[61] A prosecutor's conduct in initiating a prosecution, "including soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and presenting evidence to a judge are all activities associated with the judicial phase of criminal process for which a prosecutor is absolutely immune.[62] A prosecutor is entitled to absolute immunity when functioning "as the state's 'advocate' while engaging in the alleged conduct … giv[ing] rise to the constitutional violation."[63] For example, in *Ekwunife v. City of Philadelphia*, Mr. Ekwunife claimed an assistant district attorney continued to pursue a guilty

plea in a child sexual abuse case even after the victim recanted her initial statement of abuse on the morning of his trial. [64] Our Court of Appeals affirmed the dismissal of malicious prosecution claims against the assistant district attorney as absolutely immune.[65]

But when a prosecutor's conduct constitutes an "investigatory function," taken before there is probable cause to arrest or any conduct taken as an investigator rather than an advocate, the conduct is not protected by absolute immunity.[66] We are directed by our Court of Appeals to "parse these fine lines between advocacy and investigation," which are not subject to "bright-line rules" or "categorical reasoning."[67] This requires a fact-based inquiry. And the burden is on Attorney Murphy, as the prosecutor, to demonstrate "absolute immunity should attach to each act he committed that gave rise to the cause of action."[68] At the motion to dismiss stage, we examine Attorney Murphy's conduct *as alleged in the complaint*.[69] Attorney Murphy must show his conduct triggering absolute immunity "clearly appear[s] on the face of the complaint."[70]

We turn to Ms. Dobrosky's allegations. We apply a two-step analysis requiring we determine: (1) the conduct forming the basis of her claim; and (2) whether the conduct served a prosecutorial, administrative, or investigative function, or "something else entirely."[71] The two steps "tend to overlap."[72]

The first step requires we determine the conduct forming the basis of Ms. Dobrosky's claim against Attorney Murphy. She alleges the following conduct taken by Attorney Murphy violates her Fourth and Fourteenth Amendment rights:

- Attorney Murphy represented the Commonwealth and failed to correct false testimony from Ms. Dobrosky's ex-husband at a September 6, 2016 preliminary hearing after Ms. Dobrosky's arrest;[73]

- Attorney Murphy produced only summaries of police reports in October 2016 rather than actual police reports and other reports and materials to Ms. Dobrosky's defense counsel and failed to provide additional discovery to defense counsel;[74]

- Ms. Dobrosky's counsel told her Attorney Murphy and other members of the Bucks County District Attorney's Office expressed personal animus towards her before and during trial;[75]

- Attorney Murphy's decision to prosecute her for violating the July 30, 2015 custody order is "duplicitous" of Judge Baldi's July 25, 2016 Order finding her in contempt of the July 30, 2015 custody order;[76]

- Attorney Murphy prosecuted the case with perjured, fabricated, false, deliberately deceptive, and misleading testimony from witnesses at trial, including Detective Lange and Ms. Lometti; only introduced two exhibits at trial; and knew or should have known of the perjured testimony of her ex-husband and failed to correct it;[77]

- Attorney Murphy called Detective Lange as a rebuttal witness at trial where he fabricated evidence and testified falsely about video evidence, suppressed the actual video, and failed to correct it;[78]

- Attorney Murphy knew or should have known he elicited false testimony at trial from witness Dr. Christine Smith;[79]

- Attorney Murphy knowingly suborned perjury by witness Ms. Lometti at trial and failed to correct it; introduced evidence revealing the identity of reporters of child abuse prohibited by law in an effort to impugn Ms. Dobrosky's credibility;[80]

- Attorney Murphy based his closing argument at trial on perjured and fabricated evidence and not on facts adduced at trial;[81]

- Attorney Murphy fabricated more evidence about an additional abuse report to support a no-contact order immediately following the March 20, 2017 verdict;[82]

- Attorney Murphy moved to revoke Ms. Dobrosky's bail based on fabricated evidence in post-trial motions;[83] and

- Attorney Murphy elicited false testimony during a June 19, 2017 hearing resulting in an order sentencing Ms. Dobrosky and precluding her from having contact with her child.[84]

We next determine whether this alleged conduct served a prosecutorial, administrative, or investigative function, or "something else entirely." We conclude Attorney Murphy's complained-of conduct as alleged is entirely of an advocate functioning as the prosecutor. We review Ms. Dobrosky's allegations against Attorney Murphy as falling into five areas: (1) his role as

prosecutor for the Commonwealth at Ms. Dobrosky's preliminary hearing; (2) the decision to prosecute; (3) conduct during discovery; (4) conduct at trial; and (5) post-trial conduct.

Ms. Dobrosky challenges Attorney Murphy's failure to correct allegedly false testimony at a September 6, 2016 preliminary hearing after Ms. Dobrosky's August 2, 2016 arrest. A prosecutor is absolutely immunity from claims based on conduct initiating a prosecution, including whether and when to prosecute, and pursuing a prosecution on behalf of the Commonwealth.[85] Ms. Dobrosky challenges Attorney Murphy's decision to prosecute her as "duplicitous" (although she may mean "duplicative") of Judge Baldi's earlier contempt order. Attorney Murphy is absolutely immune in seeking an arrest warrant and decision to prosecute.[86]

Ms. Dobrosky challenges Attorney Murphy's production of summary police reports in October 2016 rather than the actual police reports and failure to provide additional unidentified discovery to her attorney. There are no allegations Attorney Murphy acted outside his role as a prosecutor by knowingly failing to preserve evidence, tampering with evidence, or withholding evidence in violation of a court order, conduct which could be outside absolute immunity.[87] There are no allegations Attorney Murphy himself independently investigated or discovered the allegedly withheld information.[88] As pleaded, Attorney Murphy's conduct with regard to discovery fell within his prosecutorial role.

Ms. Dobrosky challenges Attorney Murphy's conduct ***at trial***, including at closing argument, through the presentation of allegedly false and perjured testimony. Prosecutorial functions protected by absolute immunity include soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trial.[89] By her own allegations, Attorney Murphy's challenged conduct at trial brings him within the core of the prosecutorial function.

Prosecutors are absolutely immune from liability for eliciting false testimony from witnesses at trial.[90]

Ms. Dobrosky lastly challenges Attorney Murphy's conduct immediately following the March 20, 2017 verdict to support a no-contact order signed by Judge Boylan and a later bail-revocation hearing in June 2017. There are no allegations Attorney Murphy acted outside his role as a prosecutor. Ms. Dobrosky alleges Attorney Murphy moved to revoke her bail based on his fabricated argument she violated Judge Boylan's no-contact order by calling her daughter's nanny while in the custody of the ex-husband. This conduct falls squarely within a prosecutorial function and is entitled to absolute immunity.[91]

Ms. Dobrosky's allegations confirm Attorney Murphy's challenged conduct is "intimately associated with the judicial phase of the criminal process," including presentation of the Commonwealth's case against Ms. Dobrosky in the state court.[92] There is nothing in Ms. Dobrosky's allegations from which we can infer Attorney Murphy's conduct served an investigative or administrative function; her allegations revolve around Attorney Murphy's conduct while prosecuting the criminal case against her. Ms. Dobrosky's detailed allegations against Attorney Murphy are based on his conduct while acting as an advocate for the Commonwealth.

Ms. Dobrosky argues Attorney Murphy is not entitled to absolute immunity because the burden of demonstrating absolute immunity is heavy at the motion to dismiss stage and Attorney Murphy does not identify the acts for which he seeks absolute immunity.[93] She relies on our Court of Appeals's 2020 analysis in *Fogle v. Sokol*. In *Fogle*, Lewis Fogle sued law enforcement officials, including the district attorney and assistant district attorney for their role in the prosecution and conviction of a crime Mr. Fogle contended he did not commit, a conviction later

vacated. Mr. Fogle alleged the prosecutors violated his due process rights by fabricating inculpatory evidence, withholding exculpatory evidence, conspiring to prosecute him without probable cause, and failing to intervene when others violated his due process rights under section 1983.[94]

The prosecutors moved to dismiss the claims against them asserting absolute immunity for their conduct as prosecutors. Our Court of Appeals, after a thorough review of the history of absolute immunity in the context of section 1983, closely examined the conduct of the two prosecutors to determine whether their conduct functioned as prosecutorial—to which absolute immunity would apply—or functioned as investigative—to which absolute immunity would not apply.[95] Our Court of Appeals focused on three areas of conduct: the prosecutors' roles (1) in obtaining statements from witnesses and jailhouse informants; (2) initiation of criminal prosecution against Mr. Fogle; and (3) concealment of their conduct from the court and defense counsel.[96]

Our Court of Appeals concluded some of the prosecutors' alleged conduct taken while working with state troopers in procuring a witness's statement is investigative conduct and not protected by absolute immunity.[97] The prosecutors' alleged conduct included finding a hypnotist to hypnotize a witness and use suggestion to obtain the witness's statement, encouraging undue suggestion, and participating in post-hypnosis questioning to establish probable cause to arrest Mr. Fogle. Our Court of Appeals concluded this conduct is investigative in function and is not entitled to absolute immunity.[98] One prosecutor's conduct in interviewing another witness by joining state troopers to obtain false and fabricated statements also did not constitute conduct of an advocate, but "at the end of a long chain of investigative events led, or supervised, by [the prosecutor]."[99] And the prosecutors' conduct encouraging state troopers to fabricate statements from jailhouse

informants constituted investigative conduct in attempts to generate evidence in support of a prosecution.[100]

But our Court of Appeals concluded other conduct taken by the prosecutors constituted advocacy protected by absolute immunity. The court found alleged conduct in failing to report inconsistencies by a witness while appearing in court and presenting evidence constitutes conduct of an advocate protected by absolute immunity.[101] The court further found conduct by the prosecutors at the hearing and at trial, including alleged withholding of material exculpatory evidence from defense counsel, the court, and the jury, the filing of a criminal complaint without probable cause, and alleged perjury before and during trial are all activities "intimately associated with the judicial phase of the criminal process" and "enjoy absolute immunity."[102]

Our Court of Appeals in the last three years since *Fogle* repeatedly applied the functional analysis at the motion to dismiss stage to affirm findings the challenged prosecutors are absolutely immune from suit for conduct "intimately associated with the judicial phase of the criminal process." For example, in *Ramziddin v. Onfri*, our Court of Appeals affirmed the dismissal of claims against prosecutors for their conduct in making charging decisions, negotiating plea agreements, and presenting evidence.[103] In *Jacobs v. City of Philadelphia*, our Court of Appeals affirmed the dismissal of claims against a prosecutor for her conduct taken in her prosecutorial capacity including allegedly bringing false charges and supporting them with false and illegally obtained evidence even if those actions were retaliatory, malicious, and unsupported by probable cause.[104] But our Court of Appeals concluded alleged conduct taken by the prosecutor including investigating and threatening him is non-prosecutorial and not entitled to absolute immunity.[105] In *Noble v. United States*, our Court of Appeals affirmed the dismissal of claims against a prosecutor for alleged use of perjured testimony, false, fabricated, and unlawfully obtained evidence to obtain

a search warrant and to convince a grand jury to indict, and to persuade a magistrate judge to deny bail as conduct "intimately associated with the judicial phase of the criminal process" and entitled to absolute immunity.[106]

Our colleagues applying *Fogle* also dismiss claims against prosecutors as absolutely immune. Judge Pappert recently dismissed claims against prosecutors including allegations the prosecutors coached witnesses to implicate the criminal defendant ***at trial***, the decision to approve an arrest warrant despite the alleged existence of exculpatory evidence, alleged failure to disclose exculpatory evidence, obtaining, reviewing and evaluating evidence, and post-conviction proceedings.[107] The conduct challenged in *Navitidad* alleged coaching of witnesses at *trial* with no allegation such conduct occurred in the investigatory phase, bringing the prosecutors' conduct within absolute immunity even if the prosecutors elicited false and defamatory testimony from witnesses.[108]

While the burden of demonstrating absolute immunity is heavy at this stage, it is not insurmountable. Ms. Dobrosky's allegations regarding Attorney Murphy's conduct fall squarely within conduct "intimately associated with the judicial phase of the criminal process." Ms. Dobrosky does not allege investigatory conduct after two attempts. Applying the analysis dictated by *Fogle*, we conclude Attorney Murphy's alleged conduct served a prosecutorial function to which absolute immunity applies. We dismiss claims against Attorney Murphy. We need not determine whether Eleventh Amendment or qualified immunity applies.

### 2. Ms. Lometti is absolutely immune from a claim challenging her trial testimony.

Ms. Dobrosky challenges two areas of Ms. Lometti's conduct: (1) Ms. Lometti's negligent investigation as a social worker for the Bucks County Children & Youth Social Services Agency

into Ms. Dobrosky's November 2015 report of her daughter's sexual abuse;[109]and (2) Ms.
Lometti's false and fabricated testimony as a witness at the March 2017 trial.[110]

We closely examine Ms. Dobrosky's allegations regarding Ms. Lometti's 2015
investigation into the reports of child abuse. Ms. Dobrosky disagrees with Ms. Lometti's
investigation methods, including an alleged failure to comply with Pennsylvania's Department of
Human Services's manual for conducting investigations into reports of child sexual abuse, and
other perceived failures in Ms. Lometti's investigation and ultimate finding the alleged abuse is
unfounded.[111] Whatever Ms. Dobrosky complains of surrounding the investigation, it does not
allege a ***fabrication*** of evidence, does not allege a meaningful connection between her conviction
and use of fabricated evidence, or any type of criminal proceeding falling within the elements of a
malicious prosecution claim. If anything, these specific allegations against Ms. Lometti as an
investigator in 2015 sound in negligence. Ms. Dobrosky earlier brought state law negligence
claims against Ms. Lometti over which we declined to exercise supplemental jurisdiction.[112]

We turn to Ms. Dobrosky's claims against Ms. Lometti for alleged false and fabricated trial
testimony regarding her investigation. Ms. Lometti asserts she is absolutely immune from liability
for her trial testimony. Ms. Dobrosky responds Ms. Lometti is not entitled to absolute immunity
because her conduct took place during the investigatory phase of the child abuse report, conflating
qualified immunity with absolute immunity and bootstrapping Ms. Lometti's 2015 investigation
into the fabrication of evidence and malicious prosecution claims arising from her testimony at
trial.

Ms. Dobrosky alleges Ms. Lometti fabricated evidence ***at trial*** to deliberately deceive the
court and the jury by falsely testifying:

- Ms. Dobrosky's daughter did not make a credible report of sexual abuse during a
  November 2015 forensic interview;[113]

16

- She (Ms. Lometti) conducted an investigation into abuse allegations when she did not, lying at trial to conceal her lack of investigation into reported child abuse, including conducting a deficient investigation and lying about who she interviewed in connection with her investigation;[114] and,

- Ms. Dobrosky filed all the abuse reports when others also made reports, including by Carol Dobrosky, Glenda Hatton, and Hope Hatton.[115]

Ms. Dobrosky alleges Ms. Lometti's trial testimony is intentionally false and fabricated, "tantamount to perjury," a fabrication of inculpatory evidence, and suppression of exculpatory evidence.[116] Ms. Dobrosky alleges Ms. Lometti failed to properly investigate reports of sexual abuse and, had she done so, it would have "destroyed" Ms. Lometti's credibility, "proven" Ms. Dobrosky's defense, and resulted in the jury returning a not-guilty verdict.[117]

Witnesses are absolutely immune from damages liability based on their trial testimony, including "government officials who testify about the performance of their official duties."[118] The Supreme Court has long recognized "Congress intended [section 1983] to be construed in the light of common-law principles."[119] The testimony by witnesses at trial has historically been a function absolutely immune from liability under section 1983 and broader than at common law.[120] Trial witnesses have "absolute immunity with respect to *any* claim based on the witness' testimony."[121] The Court explained without absolute immunity for witnesses, "the truth-seeking process at trial would be impaired" because witnesses "might be reluctant to come forward to testify," and even if a witness testified, she "'might be included to shade [her] testimony in favor of the potential plaintiff for fear of subsequent liability.'"[122]

Ms. Dobrosky does not adequately address Ms. Lometti's claim of absolute immunity as a **witness**. Ms. Dobrosky cites *Ernst v. Child Youth Services* to support her argument Ms. Lometti, as a **social worker**, is not entitled to absolute immunity because she acted in an investigative or administrative capacity.[123] In *Ernst*, a grandmother brought a section 1983 action against Chester

County Children & Youth Services and its caseworkers alleging they deprived her of custody of her grandchild.[124] Our Court of Appeals held child welfare workers who prosecute dependency proceedings on behalf of the Commonwealth are, like a prosecutor's evaluation of evidence in preparation for indictment or trial, entitled to absolute immunity from suit for their actions in preparing for and prosecuting dependency proceedings.[125] The court in *Ernst* did not address absolute immunity for witnesses and, to the extent *Ernst* is applicable, does not help Ms. Dobrosky's argument.

Ms. Dobrosky also relies on the United States Court of Appeals for the Ninth Circuit's reasoning fifteen years ago in *Beltran v. Santa Clara County*.[126] The court of appeals held a social worker for California's child protective services did not have absolute immunity from claims she fabricated evidence during an investigation and made false statements in a dependency petition affidavit signed under penalty of perjury because such actions are not discretionary decisions about whether to prosecute.[127] The court distinguished conduct critical to the judicial process itself, which is entitled to absolute immunity, from conduct taken in an investigative capacity.[128] This is no different than our Court of Appeals's decision in *Fogle*; conduct taken by prosecutors in an investigatory capacity is not entitled to absolute immunity while conduct taken as an advocate in the judicial process is entitled to absolute immunity. The court of appeals's analysis in *Beltran* does not apply here. Ms. Dobrosky's claim against Ms. Lometti is her alleged fabrication of evidence and false testimony as a witness ***at trial***. While Ms. Dobrosky generally disagrees with Ms. Lometti's conduct in her 2015 investigation of the child abuse report, her allegation against Ms. Lometti now is her fabrication of evidence and perjury as a ***trial witness*** to mislead the court and jury at the March 2017 trial.[129]

Ms. Lometti offered her testimony as a witness at the March 2017 trial. She is absolutely immune from suit.[130] We dismiss Ms. Dobrosky's claims against Ms. Lometti. We need not address Ms. Lometti's asserted qualified immunity or Eleventh Amendment immunity.

### C.   Ms. Dobrosky fails to state a claim against Detective Lange and he is absolutely immune from alleged fabrications as a trial witness.

Ms. Dobrosky sues Detective Lange in his individual and official capacities.[131] He argues qualified immunity requires we dismiss him and absolute immunity requires we dismiss claims based on his trial testimony.

Ms. Dobrosky alleges Detective Lange violated her Fourth and Fourteenth Amendment rights by:

- Preparing a July 2, 2016 Affidavit of Probable Cause for her arrest on the criminal charge containing "blatant fabrications recounting nonexistent conversations with Ms. Dobrosky's father and brother and omitting "additional information … relevant and material" to reports of abuse, including the child's disclosure of sexual abuse by her father at a November 9, 2015 forensic interview and interviews of other witnesses corroborating the abuse;[132]

- Instructing a United States Marshal in Florida to not initiate contact with Ms. Dobrosky's friend in Florida until after Ms. Dobrosky's arrest;[133]

- Directing a search for the child by law enforcement unnecessary as a private investigator had already located the child in Florida before Ms. Dobrosky's arrest;[134] and,

- Falsely testifying at trial, perjuring himself, fabricating evidence, and deliberately deceiving the court including testifying to Ms. Dobrosky's termination from employment, cell phone record analysis, statements made by Ms. Dobrosky, suppressing exculpatory evidence regarding another witness's report of abuse and a video made by Ms. Dobrosky, and fabricating inculpatory evidence.[135]

### 1.   Ms. Dobrosky fails to state a claim against Detective Lange based on his Affidavit of Probable Cause.

The heart of a fabricated evidence claim is, absent the fabrication, there is a reasonable likelihood Ms. Dobrosky would not have been convicted. Ms. Dobrosky must allege a "meaningful

connection" between her conviction and the fabricated evidence.[136] A deliberate deception must be "so significant that it could have affected the outcome of the criminal case."[137] And police officers may be liable for malicious prosecution if they conceal or misrepresent material facts to prosecutors, fail to disclose exculpatory evidence to prosecutors, make false or misleading reports to prosecutors, omit material information from reports, or interfere with the prosecutor's ability to decide whether to prosecute an individual.[138]

Ms. Dobrosky alleges Detective Lange fabricated facts and omitted facts in his July 2, 2016 Affidavit of Probable Cause to support the criminal complaint against Ms. Dobrosky.[139] She alleges Detective Lange fabricated conversations he had with her father and brother which she alleges did not happen. Ms. Dobrosky does not allege the substance of the fabricated conversations. She also alleges Detective Lange omitted from the Affidavit of Probable Cause her daughter's disclosure of sexual abuse by her father during a November 9, 2015 forensic interview and failed to disclose "an actual investigation" including interviews with other witnesses "was not conducted."[140]

Ms. Dobrosky pleads no facts connecting the alleged fabrication and omissions to her conviction. She must allege a "meaningful connection" between her conviction and the fabricated evidence.[141] Ms. Dobrosky simply uses the buzzwords for a fabrication of evidence of claim, alleging "[t]here is a reasonable likelihood that without the fabricated evidence, [she] would not have been convicted."[142] This is a type of bare bones allegation failing to meet the pleading standards required by *Twombly* and *Iqbal*.  Ms. Dobrosky does not allege **how** Detective Lange's fabricated Affidavit of Probable Cause is connected to her conviction and how, absent the alleged fabrications and omissions, there is a reasonable likelihood she would not have been convicted. She does not allege **how** Detective Lange's alleged "misrepresent[ations] [of] material facts"

including termination from employment, phone records, and post-arrest statements—none of which are identified or contained in the Affidavit of Probable Cause—deprived her of her right to be free from malicious prosecution on the charge she violated the custody order by absconding to Florida.[143]

Ms. Dobrosky fails to state a claim against Detective Lange based on a fabricated Affidavit of Probable Cause.

### 2. Ms. Dobrosky fails to state a claim relating to the return of the child from Florida.

Ms. Dobrosky does not allege facts allowing us to infer how Detective Lange's instruction to the United States Marshal Service in Florida not to contact Ms. Dobrosky's friend in Florida with custody of the child in Florida until after Ms. Dobrosky's arrest and Detective Lange's directive to search for Ms. Dobrosky's daughter in Florida simply because a private investigator had already located the child there, even if true, constitutes a fabrication of evidence, a concealment or misrepresentation of evidence, or is otherwise false or misleading. Ms. Dobrosky fails to allege absent these fabrications, there is a reasonable likelihood Ms. Dobrosky would not have been convicted. Ms. Dobrosky fails to allege a "meaningful connection" between her conviction and the fabricated evidence. She does not allege how these alleged fabrications were made to Bucks County prosecutors and how such alleged fabrications interfered with the District Attorney's Office decision to prosecute her. She fails to state a claim as against Detective Lange for this conduct.

### 3. Detective Lange is absolutely immune from claims based on trial testimony.

Ms. Dobrosky alleges Detective Lange falsely testified at trial, perjured himself, fabricated evidence, and deliberately deceived the court including testifying to Ms. Dobrosky's termination

from employment, testified to cell phone record analysis and statements made by Ms. Dobrosky she contends she did not make, suppressed exculpatory evidence regarding another witness's report of abuse and a video made by Ms. Dobrosky, and fabricated inculpatory evidence at trial. Detective Lange is absolutely immune from claims based on his trial testimony for the reasons explained in our conclusion Ms. Lometti is entitled to absolute immunity.

Witnesses are absolutely immune from damages liability based on their trial testimony, including police officers.[144] The Supreme Court over forty years ago rejected an exception to the general rule of immunity in cases where police officers allegedly perjured themselves.[145] Focusing on the "functional categories" and not the status of the witnesses, the Court reasoned a police officer "on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury."[146] The Court further reasoned "to the extent that traditional reasons for witness immunity are less applicable to governmental witnesses, other considerations of public policy support absolute immunity more emphatically for such persons than for ordinary witnesses. Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."[147] We dismiss all claims against Detective Lange arising from his trial testimony as absolutely immune from liability.

Given the deficiencies in Ms. Dobrosky's amended complaint, we need not now address Detective Lange's qualified immunity defense. We allow Ms. Dobrosky to amend her complaint if she can do so compliant with Federal Rule of Civil Procedure 11.

### III.   Conclusion

We dismiss Ms. Dobrosky's amended Complaint. As currently pleaded, Assistant District Attorney Murphy is entitled to absolute immunity for his conduct taken within the scope of his prosecutorial role and Ms. Lometti is entitled to absolute immunity for her testimony as a witness at trial. Ms. Dobrosky fails to state a claim against Detective Lange for his alleged non-trial conduct and the complained-of conduct as a trial witness is entitled to absolute immunity. We dismiss the claims against Detective Lange.

---

[1] ECF No. 13 ¶ 10. Ms. Dobrosky is an attorney currently suspended from the practice of law in Pennsylvania.

[2] *Id.* ¶¶ 15–18.

[3] *Id.* ¶¶ 24–25.

[4] *Id.* ¶ 26.

[5] *Id.* ¶ 27.

[6] *Id.* ¶¶ 27–28.

[7] *Id.* ¶¶ 29–37.

[8] *Id.* ¶ 46.

[9] *Id.* ¶¶ 46.

[10] *Id.* ¶ 43.

[11] *Id.* ¶ 61.

[12] *Id.* ¶ 62.

[13] *Id.* ¶ 63.

[14] *Id.* ¶¶ 64–65.

[15] *Id.* ¶ 66.

---

[16] *Id.* ¶ 67.

[17] *Id.* ¶¶ 68–70.

[18] *Id.* ¶ 71.

[19] *Id.* ¶¶ 72–74.

[20] Under Pennsylvania law, "[a] person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa. Cons. Stat. Ann. §2904(a). It is a defense to the charge if "the actor believed that his action was necessary to preserve the child from danger to its welfare." *Id.* § 2904(b)(1).

[21] ECF 13 ¶¶ 75–81, 83–139. The court set bail at $1 million. *Id.* ¶ 74. Ms. Dobrosky could not post ten percent of bail and remained a pre-trial detainee. *Id.*

[22] *Id.* ¶ 82.

[23] *Id.* ¶ 83.

[24] *Id.* ¶ 130.

[25] *Id.* ¶ 132.

[26] *Id.* ¶ 133.

[27] *Id.* ¶¶ 134–139.

[28] *Id.* ¶ 140. Ms. Dobrosky filed a lawsuit on April 25, 2018 in this Court against the Bucks County Children & Youth Social Services Agency, its Director Lynne Rainey, and social workers Jennifer Lometti and Suzanne Manicelli in the two-year period between Ms. Dobrosky's appeal and the Pennsylvania Superior Court's August 19, 2019 decision. *Dobrosky v. Lometti, et al.*, No. 18-1727 ("*Dobrosky I*"). In *Dobrosky I*, Ms. Dobrosky alleged these persons violated her First, Fourth, and Fourteenth Amendment rights by failing to interview the individuals who reported her daughter's abuse and failed to obtain and review her daughter's medical records during its investigation. She asked us to direct the Agency to reopen its investigation, appoint a guardian *ad litem* for her daughter, appoint a qualified professional to determine whether her daughter is safe in the father's custody, and, if appropriate, remove her daughter from the father's custody. She also sought monetary damages. *Dobrosky I*, ECF No. 1. We granted the state actors' Motion to dismiss Ms. Dobrosky's section 1983 claim as barred by the *Rooker-Feldman* doctrine, barred by the statute of limitations, and declined to exercise supplemental jurisdiction over Ms. Dobrosky's state law negligence claim. *Id.* at ECF Nos. 12, 13. We granted Ms. Dobrosky leave to amend her complaint. *Id.* ECF Nos. 13, 15. Ms. Dobrosky advised us she did not intend to amend and we dismissed the case on September 4, 2018. *Id.* at ECF Nos. 16, 17.

[29] ECF No. 13 ¶¶ 141–142; *Commonwealth v. H.D.*, 217 A.3d 880 (Pa. Super. Ct. 2019).

[30] *Id.* ¶ 143; *Commonwealth v. H.D.*, 247 A.3d 1062 (Pa. 2021).

[31] *Id.* ¶ 144.

[32] ECF No. 13. Ms. Dobrosky first sued Bucks County Children & Youth Social Services and the Lower Makefield Township Police Department in addition to Ms. Lometti, Detective Lange, and Assistant District Attorney Murphy. *See* ECF No. 1. She then filed an amended Complaint, voluntarily dismissing the two entities without prejudice. ECF No. 13. We dismissed the Bucks County Children & Youth Social Services and the Lower Makefield Police Department. *See* ECF No. 19.

[33] ECF No. 13 ¶¶ 5, 6.

[34] *Id.* ¶ 7.

[35] *See* ECF Nos. 16, 25.

[36] ECF Nos. 25, 22.

[37] ECF No. 16.

[38] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e]

note of the elements a plaintiff must plead to state a claim'"); (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[39] Congress in section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injury in an action at law, suits in equity, or other proper proceeding for redress …" 42 U.S.C. § 1983.

[40] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020).

[41] ECF No. 13 ¶¶ 1, 156.

[42] *Halsey v. Pfeiffer*, 750 F.3d 273, 294–95 (3d Cir. 2014); *Black v. Montgomery Cnty.*, 835 F.3d 358, 368–72 (3d Cir. 2016).

[43] *Halsey*, 750 F.3d at 794, n. 19.

[44] *Dennis v. City of Phila.*, 379 F. Supp. 3d 420, 432 (E.D. Pa. 2019), *aff'd* 19 F.4th 279 (3d Cir. 2021) (quoting *Halsey*, 750 F.3d at 295).

[45] *Zimmerman v. Corbett*, 873 F.3d 414 (3d Cir. 2017), *cert. denied,* 138 S.Ct. 2623, 201 L.Ed.2d 1027 (2018).

[46] *Id.*, 873 F.3d at 418; *Young v. City of Chester, PA*, 764 F. App'x 262, 265 (3d Cir. 2019).

[47] *Thorpe v. City of Phila.*, No. 19–5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

[48] *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

[49] *Id.* at 157–58.

[50] *McDonough v. Smith*, 588 U.S. ---, 139 S.Ct. 2149, 2154–55 (2019).

[51] ECF No. 1.

[52] ECF No. 13 ¶ 144.

[53] *Id.* at 110 (using the pagination assigned by the CM/ECF docketing system).

[54] ECF No. 16–3 at 9–10. Ms. Lometti and Attorney Murphy concede the limitations period for the malicious prosecution claim began on July 13, 2021 when the Commonwealth moved to *nolle pros* the charges against Ms. Dobrosky. Like Detective Lange, Ms. Lometti and Attorney Murphy mistakenly believe Ms. Dobrosky did not file her complaint until July 25, 2023.

[55] *McDonough*, 139 S.Ct. at 2153, 2161.

[56] *Id.* at 1256.

[57] *Id.* at 2158.

[58] We dismiss claims against Ms. Lometti in her official capacity. Claims against Ms. Lometti in her official capacity is another way of pleading an action against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Any claim against Ms. Lometti in her official capacity is a claim against the Bucks County Children & Youth Social Services Agency, treated as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1986). Ms. Dobrosky does not have a *Monell* claim against the Bucks County Children & Youth Social Services Agency having discontinued her claims against that entity in her amended complaint. *See Pickel v. Lancaster Cnty. Children and Youth Soc. Servs. Agency*, No. 20-3228, 2021 WL 4168152, at * 2 (3d Cir. Sept. 14, 2021).

[59] *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020).

[60] *Id.*

[61] *Id.* at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)).

[62] *Id.* (cleaned up).

[63] *Ekwunife v. City of Phila.*, 756 F. App'x 165, 169 (3d Cir. 2018) (cleaned up).

[64] *Id.*

[65] *Id.*

[66] *Fogle,* 957 F.3d at 160.

[67] *Id.*

[68] *Id.* (citation omitted).

[69] *Id.* at 161 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[70] *Id.* (quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

[71] *Id.* (citing *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011)).

[72] *Id.*

[73] ECF No. 13 ¶¶ 75–76.

[74] *Id.* ¶¶ 77–78.

[75] *Id.* ¶ 79.

[76] *Id.* ¶¶ 80–81.

[77] *Id.* ¶¶ 84–87.

[78] *Id.* ¶¶ 92–93, 97.

[79] *Id.* ¶ 98.

[80] *Id.* ¶¶ 108–110.

[81] *Id.* ¶¶ 112–129.

[82] *Id.* ¶¶ 131–132.

[83] *Id.* ¶¶ 134–137.

[84] *Id.* ¶¶ 138–140.

[85] *Imbler v. Pachtman*, 424 U.S. 409, 430–31, n.33 (1976). *See also Garcia v. Phila. Dist. Attorney's Office*, No. 23-1224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (per curiam) (affirming district court's dismissal of claims against Philadelphia District Attorney as absolutely immune for conduct in issuing an arrest warrant later cancelled and charges dismissed).

[86] *Garcia*, 2023 WL 3750604 at *2 (citing *Imbler*, 424 U.S. at 430–31 and *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997)).

[87] *Muchinski v. Solomon*, 747 F. App'x 52, 56–60 (3d Cir. 2018).

[88] *Gainey v. City of Phila.*, No. 22-4143, 2023 WL 8258771, at *10–*11 (E.D. Pa. Nov. 29, 2023).

[89] *Kulwicki v. Dawson*, 969 F.2d 1454, 1464–65 (3d Cir. 1992).

[90] *Burns*, 500 U.S. at 490.

[91] *Popichak v. Peurifoy*, No. 23-3678, 2023 WL 6810096 at *5 (E.D. Pa. Oct. 16, 2023) (prosecutors entitled to absolute immunity under 1983 for placing a detainer and recommending bail be denied or revoked).

[92] *Imbler*, 424 U.S. at 430–31.

[93] ECF No. 21 at 16–17.

[94] *Fogle*, 957 F.3d at 155.

[95] *Id.* at 156–161.

[96] *Id.* at 161.

[97] *Id.* at 161–62.

[98] *Id.*

[99] *Id.* at 162–63.

[100] *Id.* at 163–64.

[101] *Id.* at 162.

[102] *Id.* at 164.

[103] *Ramziddin v. Onfri*, No. 22-2798, 2023 WL 2597588, at *1 (3d Cir. Mar. 21, 2023) (per curiam), *cert. denied*, No. 23-5333, 2023 WL 6797756 (Oct. 16, 2023).

[104] *Jacobs v. City of Phila.*, No. 21-2314, 2022 WL 1772989, at *2 (3d Cir. June 1, 2022) (per curiam).

[105] *Id.* at *3.

[106] *Noble v. United States*, 855 F. App'x 816, 820 (3d Cir. 2021) (quoting *Fogle*, 957 F.3d at 159–61).

[107] *Natividad v. Raley*, No. 22-5061, 2023 WL 7412931, at *3–*5 (E.D. Pa. Nov. 9, 2023).

[108] *Id.* at *3 (quoting *Burns*, 500 U.S. at 489–90).

[109] ECF No. 13 ¶¶ 29–33, 35–41, 45–48, 50–57, 59.

[110] *Id.* ¶¶ 84, 99–107, 111, 156, 167.

[111] *Id.* ¶¶ 29–59.

[112] *See Dobrosky v. Lometti*, No. 18-1727, 2018 WL 3824358 (E.D. Pa. Aug. 10, 2018).

[113] ECF No. 13 ¶ 99.

[114] *Id.* ¶¶ 100–103.

[115] *Id.* ¶¶ 104–105, 156, 167.

[116] *Id.* ¶¶ 106–107. 156.

[117] *Id.* ¶¶ 107, 111.

[118] *Kennedy v. City of Phila.*, 749 F. App'x 90, 93 (3d Cir. 2018) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)).

[119] *Rehberg v. Paulk*, 566 U.S. 356, 362–63 (2012).

[120] *Id.* at 363, 366–67 (citing *Briscoe*, 460 U.S. at 330).

[121] *Id.* at 367 (emphasis in original).

[122] *Id.* (quoting *Brisco*e, 460 U.S. at 333).

[123] *See* ECF No. 21 at 14.

[124] 108 F.3d 486 (3d Cir. 1997).

[125] *Id.* at 493–499. We cannot locate in the *Ernst* opinion the quote Ms. Dobrosky includes in her response brief. *See* ECF No. 21 at 14.

[126] 514 F. 3d 906 (9th Cir. 2008).

[127] *Id.* at 908.

[128] *Id.*

[129] Ms. Dobrosky also cites *Fogarty-Hardwick v. County of Orange*, No. G039045, 2010 WL 354383 (Cal. Ct. App. June 14, 2020) for the proposition county social workers are not entitled to absolute immunity. *See* ECF No. 21 at 15. The California Court of Appeals dismissed an absolute immunity defense without addressing the defense on the merits because the court concluded the county waived the absolute immunity defense. *Id.* at *6. The remainder of the opinion addressed qualified immunity. *Id.* at 13–*14. The other cases cited by Ms. Dobrosky involve qualified immunity.

[130] *See Carter v. Hayes*, No. 23-2200, 2023 WL 7297333, at *1 (3d Cir. Nov. 6, 2023) (affirming dismissal of prisoner's section 1983 claims against his former probation officer as absolutely immune from damages after falsely testifying at a probation revocation hearing the prisoner had not received drug and alcohol screening).

[131] We dismiss claims against Detective Lange in his official capacity. Claims against Detective Lange in his official capacity is another way of pleading an action against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Any claim against Detective Lange in his official capacity is a claim against the Lower Makefield Township Police Department under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1986). Ms. Dobrosky does not have a *Monell* claim against the Lower Makefield Township Police Department having discontinued her claims against it in her amended complaint.

[132] ECF No. 13 ¶¶ 63–65.

[133] *Id.* ¶ 72.

[134] *Id.* ¶ 73.

[135] *Id.* ¶¶ 84, 88–96, 156–159, 166. Although not entirely clear, we gather from the amended Complaint and the parties' responses Ms. Dobrosky's employer terminated her employment after Detective Lange contacted the employer during his investigation. It appears Ms. Dobrosky denies her employer terminated her and alleges Detective Lange's trial testimony regarding her termination sparked by his contacting her employer during his investigation is a fabrication. Ms. Dobrosky does not explain how any of this alters our analysis of her fabricated evidence or malicious prosecution claims.

[136] *Halsey*, 750 F.3d at 294, n. 19.

[137] *Dennis,* 379 F. Supp. 3d at 432 (quoting *Halsey*, 750 F.3d at 295).

[138] *Thorpe*, 2020 WL 5217396 at *12.

[139] ECF No. 13 ¶¶ 63–65.

[140] *Id.* ¶¶ 64-65.

[141] *Halsey*, 750 F.3d at 294, n. 19.

[142] ECF No. 13 ¶ 159.

[143] *Id.* ¶ 166.

[144] *Briscoe*, 460 U.S. at 341–42. *See also Simonton v. Ryland-Tanner*, 836 F. App'x 81, 83–84 (3d Cir. 2020) (police officers who testify in criminal trials are protected by absolute witness immunity from suits under section 1983).

[145] *Briscoe*, 460 U.S. at 341–42.

[146] *Id.* at 342.

[147] *Id.* 342–43.