**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOLLY DOBROSKY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-2612** |
| | : | |
| **JENNIFER LOMETTI** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **January 30, 2024**

A mother crediting her young daughter's reports of an ex-husband sexually abusing their daughter disregarded a state court joint custody order by admittedly taking the daughter to Florida in July 2016. She returned to answer criminal charges of interfering with the custody of a child where she asserted the complete defense her admitted conduct necessary to protect the daughter. A state court jury found her guilty of interfering with the custody of a child by fleeing the Commonwealth but the state appellate courts reversed the conviction. The mother then sued state officials here. We dismissed her two earlier attempts at pleading claims with leave to amend. The mother now sues only the county social worker who found the daughter's reports unfounded nine months before the mother took her daughter to Florida. The mother now alleges the social worker never investigated the daughter's reports and fabricated doing an investigation. She seeks damages claiming the social worker violated her substantive and procedural due process rights and furthered a malicious prosecution based on her fleeing the Commonwealth. We are sympathetic to the mother's concerns. We abhor child abuse. Our Court of Appeals has unfortunately had to increasingly instruct on the law on these issues including in the past year. We are guided by the court's direction in finding the mother has not, after three attempts, pleaded due process or malicious prosecution claims against the social worker. We dismiss her third attempt at claims against the social worker with prejudice.

## I.  Alleged pro se facts

Former attorney Holly Dobrosky of Bucks County believed her then-husband sexually abused their four-year-old daughter almost ten years ago based on her daughter's telling the family nanny.[1] Bucks County Children & Youth Social Services Agency  investigated the child's report of sexual abuse in early 2015.[2] But it found the allegations unfounded.[3] Ms. Dobrosky and her husband began divorce proceedings in mid-2015.[4] The two agreed on a shared custody arrangement resulting in a July 30, 2015 custody order.[5]

Ms. Dobrosky's daughter again reported sexual abuse by her father in early November 2015.[6] Ms. Dobrosky reported the abuse to police and an officer told her a social worker from Bucks County Children & Youth Services Agency would contact her and begin an investigation.[7] Ms. Dobrosky also sought a protection from abuse order on her daughter's behalf based on the renewed reports of abuse, granted by Bucks County Judge Robert Baldi on November 2, 2015.[8] Bucks County Children & Youth Services assigned social worker Jennifer Lometti to investigate the November 2015 report of sexual abuse.[9]

### The November 9, 2015 forensic interview of the child.

Social Worker Lometti told Ms. Dobrosky the Agency would conduct a forensic interview of the child on November 9, 2015 and would begin an investigation if the child disclosed abuse during the interview.[10] Ms. Dobrosky provided Social Worker Lometti with information, including the names and contact information of people with knowledge of the abuse allegations, observations of the child's worrisome behavior, the father's cancellation of the child's therapy appointments, and the therapist's recommendation the child seek treatment with a professional qualified in treating child sexual abuse victims.[11]

Ms. Dobrosky's daughter disclosed sexual abuse by her father at the November 9, 2015 forensic interview.[12] Social Worker Lometti told Ms. Dobrosky she (Social Worker Lometti) would begin an investigation based on the child's disclosure of abuse and interview individuals with knowledge of the abuse.[13] Social Worker Lometti also told Ms. Dobrosky she (Social Worker Lometti) would appear in court the next day to request an extension of Judge Baldi's temporary protection from abuse order.[14]

Bucks County Judge James McMaster held a hearing on November 10, 2015 to extend the protection from abuse order.[15] Social Worker Lometti did not appear at the hearing.[16] The daughter's counsel asked Judge McMaster to extend the protection order but Judge McMaster denied the request and vacated the temporary protection from abuse order.[17] The daughter resumed contact with her father.[18]

### Social Worker Lometti concludes the abuse is "unfounded."

Social Worker Lometti concluded the child's report of abuse unfounded three days after her November 9, 2015 forensic interview.[19] Ms. Dobrosky suspected Social Worker Lometti could not have come to such a conclusion only three days after the forensic interview and without doing an investigation. Ms. Dobrosky contacted Social Worker Lometti to question why she concluded the report of abuse as unfounded.[20] Social Worker Lometti told Ms. Dobrosky she could find no evidence to corroborate the daughter's claim beyond the daughter's credible disclosure of abuse at the forensic interview.[21] Ms. Dobrosky disagreed with Social Worker Lometti's conclusion, and suggested Social Worker Lometti take further action based on the information Ms. Dobrosky earlier provided.[22] Social Worker Lometti declined to do so; she did not further investigate, conduct interviews of persons with knowledge of the alleged abuse or obtain medical evidence, and failed to comply with Pennsylvania's Child Protective Services Law.[23]

Ms. Dobrosky contacted child welfare agencies to complain the Bucks County Children & Youth Services Agency failed to investigate the reported abuse notwithstanding knowing Social Worker Lometti interviewed her daughter but found no evidence.[24] Ms. Dobrosky created a video of her daughter describing the abuse and gave the video to Social Worker Lometti in mid-December 2015 asking Social Worker Lometti to conduct an investigation.[25] Social Worker Lometti declined to investigate.[26]

### Ms. Dobrosky takes her daughter to Florida.

We are not aware of the parties' conduct from mid-December 2015 until May 2016. Ms. Dobrosky became concerned with her child's May 2016 pleas to avoid being in the presence of her father.[27] Ms. Dobrosky then decided to unilaterally withhold custody of her child from the father notwithstanding the July 30, 2015 shared custody order. Ms. Dobrosky took her child from Bucks County to Florida in early July 2016.[28]

Police obtained a warrant for Ms. Dobrosky's arrest for interfering with the child's custody.[29] The Commonwealth charged her with interfering with the custody of a child in violation of Pennsylvania law.[30]

### The Commonwealth's prosecution including Social Worker Lometti's testimony.

Trial began in Bucks County on March 17, 2017.[31] Ms. Dobrosky defended the charge by asserting her conduct necessary to protect her child from the danger posed by the father, a complete defense to the charge.[32] The Commonwealth adduced the testimony of the father, Lower Makefield Township Police Detective Peter Lange, and, on rebuttal, the child's therapist, Social Worker Lometti, and Police Detective Andrew Amoroso.[33] Ms. Dobrosky's counsel adduced the testimony of the child's nanny, Ms. Dobrosky, and five character witnesses.[34]

Ms. Dobrosky alleges Social Worker Lometti falsely testified at trial:

- The child did not make a credible disclosure of sexual abuse at the November 9, 2015 forensic interview;[35]

- Fabricated evidence of an investigation, including interviews of the child's nanny and the nanny's daughter when she did not interview them;[36]

- Fabricated evidence by falsely testifying Ms. Dobrosky made multiple abuse complaints when she made only one;[37]

- Fabricated evidence by falsely testifying she (Social Worker Lometti) did not interview the child's maternal grandmother to whom the child reported abuse because she (Social Worker Lometti) did not know of the grandmother as a potential witness.[38]

The jury found Ms. Dobrosky guilty.[39] Ms. Dobrosky timely appealed from her conviction. The Pennsylvania Superior Court reversed Ms. Dobrosky's conviction and denied the Commonwealth's petition for reargument.[40] The Pennsylvania Supreme Court affirmed the Superior Court's reversal of Ms. Dobrosky's conviction on March 25, 2021.[41] The District Attorney withdrew its prosecution of Ms. Dobrosky on July 14, 2021.[42]

Ms. Dobrosky pro se brought this case almost two years later.[43] Ms. Dobrosky seeks compensatory and punitive damages claiming Social Worker Lometti deprived her of liberty without due process and the right to familial association violative of the First and Fourteenth Amendments; deprived her of liberty without due process and denial of a fair trial based on fabricated evidence violative of the Fourteenth Amendment; and, engaged in malicious prosecution violative of the Fourth Amendment.

The gist of Ms. Dobrosky's claim is a challenge to the steps she thinks Social Worker Lometti should have done. Ms. Dobrosky is "not claiming she disagreed with [Social Worker Lometti's] investigation but instead claims [Social Worker Lometti] FABRICATED it—that is[,] it does not and never did exist/occur"[44] and she "has not and does not claim that [Social Worker

Lometti] was negligent in her investigation—or the accuracy of her trial testimony—but that she did NOT conduct an investigation and her testimony was fabricated and/or false."[45] Ms. Dobrosky alleges Social Worker Lometti fabricated the very existence of an investigation and then testified at trial to her fabricated investigation with a fabricated conclusion the report of child abuse is unfounded. For example, Ms. Dobrosky alleges: Social Worker Lometti "conducted absolutely no investigation but instead fabricated it—she also fabricated her conclusion that the report was 'unfounded'";[46] "[d]espite the fact that at [Ms. Dobrosky's] trial [Social Worker] Lometti alleged that she conducted interviews during her supposed non-existent investigation into [Ms. Dobrosky's] aforesaid child abuse report, the Commonwealth's Discovery Packet did **NOT** contain any Interviews [sic] or documents related thereto. That is because [Social Worker Lometti] conducted absolutely not a single interview";[47] and "[Social Worker Lometti] did not conduct [a forensic interview] but falsely claimed at [Ms. Dobrosky's] trial that therein, the child made a disclosure of abuse which was not credible."[48]

Ms. Dobrosky alleges if the jury "never heard [Social Worker] Lometti's fabricated evidence and false/perjured testimony about an alleged investigation and alleged interviews they would have had no reasonable and/or legitimate basis to conclude that the Commonwealth proved beyond a reasonable doubt that [Ms. Dobrosky's] daughter was not in danger from [father] and, pursuant to the relevant jury instruction which they requested to be reread after they commenced their deliberations, would have found the defendant not guilty—as directed by the relevant jury instruction …" and "the truth" Social Worker Lometti "did **NOT** investigate [father's] abuse and did not conduct any interviews—would have proven [Ms. Dobrosky's] contention that she withheld custody to protect her child from [father], and … would likely have procured a not guilty

verdict because the Commonwealth would have been unable to prove [Ms. Dobrosky's] child was not in danger and in need of protection from [father.]"[49]

## II. Analysis

Social Worker Lometti moves to dismiss the second amended Complaint.[50] She argues Ms. Dobrosky's allegations are identical to the allegations in the amended Complaint we already dismissed based on Social Worker Lometti's absolute immunity as a trial witness.[51] She argues the second amended Complaint does not address the deficiencies of the amended Complaint and continues to challenge Social Worker Lometti's conduct as a trial witness.

Not so, responds Ms. Dobrosky. She contends her second amended Complaint asserts substantive and procedural due process claims different from the amended Complaint and she is not challenging Social Worker Lometti's trial testimony. Ms. Dobrosky explains she is now asserting a substantive due process claim under the First and Fourteenth Amendments to be free from government intrusion into her right to familial association by fabricating evidence and "deliberate deception" and a procedural due process claim for the denial of a fair trial through the use of fabricated evidence violative of the Fourteenth Amendment.[52]

### A. We dismiss the deprivation of familial association substantive due process claim.

Ms. Dobrosky asserts First and Fourteenth Amendment claims under 42 U.S.C. § 1983.[53] To state a claim under section 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution or federal law; and (2) a person acting under color of state law committed the alleged deprivation.[54]

The right to intimate association arises from the First Amendment or the Fourteenth Amendment, or both.[55] The First Amendment protects an individual's right "to enter into and maintain certain intimate human relationships," a "fundamental element of personal liberty."[56]

Relationships protected by the First Amendment include "those that attend the creation and sustenance of a family—marriage, … the raising and education of children, … and cohabitation with one's relatives."[57] The right "must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."[58] To state a claim for a deprivation of the right to freedom of intimate association in violation of the First Amendment, Ms. Dobrosky must allege "the challenged action directly and substantially interfered with the intimate relationship."[59]

The Fourteenth Amendment due process clause protects an individual's liberty interest in the custody, care, and management of her child.[60] A state actor may not interfere in familial relationships without procedural and substantive due process.[61] To state a substantive due process claim, Ms. Dobrosky must allege state action which "shocks the conscience."[62] Substantive due process claims in child custody actions requires "decision-making by a social worker that is so clearly arbitrary … [that it] can properly be said to 'shock the conscience'" which depends on "the circumstances of a particular case."[63] Our Court of Appeals directs us to assess the circumstances because a "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks" and "[i]n such situations, the 'standard of culpability' necessary for a child welfare employee's actions to shock the conscience must generally 'exceed both negligence and deliberate indifference.'"[64]

Ms. Dobrosky frames her intimate association claim as a substantive due process claim, alleging Social Worker Lometti's conduct is "so egregious it shocks the conscience."[65] In response to the Motion to dismiss, Ms. Dobrosky clarifies her claim is for the "denial of right to familial association in violation of the First and Fourteenth Amendments—a substantive due process claim" and her "First Amendment [c]laim is substantive—not procedural …."[66]

We assess Ms. Dobrosky's claim as a Fourteenth Amendment substantive due process claim as she has framed it. The threshold question in a section 1983 action is whether a plaintiff alleges a deprivation of a constitutional right. What is the constitutional right here? Ms. Dobrosky alleges it is a substantive due process right to be free from government intrusion into her family. What did Social Worker Lometti do to deprive Ms. Dobrosky of her constitutional right to be free from government intrusion into her family? Ms. Dobrosky alleges it is Social Worker Lometti's failure to do an investigation after the November 9, 2015 forensic interview and her later trial testimony where Social Worker Lometti fabricated the existence of an investigation which revealed the complaint of abuse unfounded depriving her of her substantive due process right to the custody of her child.

We dismiss these conclusory allegations as failing to plausibly state a substantive due process claim.[67] Our Court of Appeals's guidance six months ago is instructive. In *Lewis v. New Jersey Department of Children and Families*, a father sued New Jersey state child protection agencies, its employees, medical doctors retained by the state, and his ex-wife (mother of the children) under section 1983 alleging a deprivation of his substantive due process rights to his children.[68] Mr. Lewis alleged the state's child protection agency initiated an investigation into his children's safety in his home without evidence, the agency's employees fabricated evidence, and made false allegations against him while at the same time refusing to investigate his concerns about the children's safety in the ex-wife's home.[69] Mr. Lewis alleged a physician retained by the agency "fabricated a false psychological evaluation of [him] with an improper diagnosis" to be used as evidence against him and alleged the physician "improperly weighed the information before him by inexplicably recommending [the] children be placed with [ex-wife]."[70]

Our Court of Appeals concluded Mr. Lewis failed to allege how the physician's evaluation, allegedly based on a fabricated psychological evaluation, diagnosis, or recommendation, "influenced the ultimate custody decision, if at all, and how [physician's] actions were related to a deprivation of his rights."[71] The court of appeals found Mr. Lewis's "bald and conclusory allegations" are "so threadbare … that they fail to cross the line between the conclusory and the factual" and could not be presumed true at the pleading stage.[72] And, even if the allegations were not conclusory, they failed to provide information from which the court could conclude "discovery will reveal anything that was actually improper about [physician's] work, let alone at a level that 'shocks the conscience.'"[73]

In *B.S. v. Somerset County*, our Court of Appeals concluded the conduct of a social worker for the Somerset County Children and Youth Services did not "shock the conscience."[74] In *B.S.*, the county's social worker removed a child from her mother's care. The mother claimed the social worker denied her substantive due process by removing the child based on misrepresented medical evidence, "concocted facts," and manipulated evidence as a basis for the social worker's recommendation to the court mother should not regain custody of the child.[75] Our Court of Appeals concluded even if the social worker is not absolutely immune for her action in recommending the mother not regain custody, the social worker's conduct did not "shock the conscience" because it did not exceed negligence or the deliberate indifference standard.[76] The Court explained even if the social worker's actions "may not be free from fault, … they cannot be said to shock the conscience," including misstatements about the child's health which could not "be viewed as more than mere negligence."[77]

Our Court of Appeals's reasoning in *Lewis* and *B.S.* informs our conclusion Ms. Dobrosky does not (after three attempts) state a substantive due process claim against Social Worker Lometti

for the deprivation of her right "to be free from government intrusion into her family."[78] We do not see how Social Worker Lometti's alleged failure to do an investigation deprived Ms. Dobrosky of the custody of her child. Following Ms. Dobrosky's logic, if Social Worker Lometti had done an investigation or, more specifically, had not fabricated an investigation and then lied about while testifying at trial, the Commonwealth would not have been able to prove Ms. Dobrosky's statutory defense to the charge of interfering with a child's custody is inapplicable, the jury would not have found Ms. Dobrosky guilty, and she would then have had custody of her child. Ms. Dobrosky alternatively alleges if Social Worker Lometti had investigated, including interviewing the witnesses identified by Ms. Dobrosky and obtained relevant medical evidence, "she would have concluded" the November 1, 2015 abuse report "founded," justifying Ms. Dobrosky fleeing to Florida to protect her child.[79]

But nothing Social Worker Lometti did or did not do before her trial testimony amounts to an unconstitutional interference with the parent-child relationship. Ms. Dobrosky indeed confirms her substantive due process claim is not based on Social Worker Lometti's negligence or the accuracy of her trial testimony and instead is based on Social Worker Lometti's failure to conduct an investigation at all.[80] Nor do we see how, as pleaded, Social Worker Lometti's conduct "shocks the conscience" based on the standards set by our Court of Appeals.

We are left with Ms. Dobrosky's allegations Social Worker Lometti perjured herself at trial. But Social Worker Lometti is absolutely immune from a claim based on her trial testimony as we explained in our December 4, 2023 Memorandum dismissing Ms. Dobrosky's amended Complaint.[81] Even if Ms. Dobrosky is not challenging Social Worker Lometti's trial testimony, we conclude Ms. Dobrosky fails to state a claim for a Fourteenth Amendment deprivation of substantive due process. We dismiss Count I of her second amended Complaint.[82]

**B.  We dismiss the Fourteenth Amendment fabrication-of-evidence claim.**

Ms. Dobrosky styles her second claim as a section 1983 deprivation of liberty without due process and denial of a fair trial through the use of fabricated evidence under the Fourteenth Amendment. The fact basis for this claim is identical to the Fourteenth Amendment substantive due process claim.[83] Ms. Dobrosky alleges Social Worker Lometti deprived her the right to a fair trial by using fabricated evidence without procedural due process.[84] We will analyze the fabrication-of-evidence claim as a procedural due process claim.

Our Court of Appeals ten years ago in *Halsey v. Pfeiffer* instructed there is a stand-alone claim under section 1983 based on the Fourteenth Amendment "if a defendant has been convicted at trial at which the prosecution has used fabricated evidence … if there is reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."[85] Ms. Dobrosky "must draw a meaningful connection between [her] conviction and the use of fabricated evidence against [her]."[86] To succeed on a deliberate deception claim, Ms. Dobrosky must allege the conduct "was so significant that it could have affected the outcome of the criminal case."[87]

Our Court of Appeals two years later extended its holding in *Halsey* to acquitted criminal defendants in *Black v. Montgomery County*.[88] The court held "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent the fabricated evidence, the defendant would not have been criminally charged."[89] Like *Halsey*, the "reasonable likelihood" standard "requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her."[90]

Ms. Dobrosky alleges Social Worker Lometti "fabricated inculpatory evidence and suppressed exculpatory evidence."[91] Under *Halsey* and *Black*, Ms. Dobrosky may have a stand-

alone Fourteenth Amendment due process claim if she is convicted at trial where the prosecutor used fabricated evidence or if she is criminally charged through the use of fabricated evidence and there is a reasonable likelihood without the use of the evidence she would not have been convicted or charged.

So we ask what is the fabricated inculpatory evidence alleged here? Ms. Dobrosky alleges the fabrication is Social Worker Lometti conducted an investigation into the November 2015 reported abuse but "conducted absolutely no investigation" and then "fabricated her conclusion that the report [of abuse in early November 2015] was 'unfounded.'"[92] Social Worker Lometti then appeared at trial and testified she found the November 2015 report of abuse unfounded based on her non-existent and fabricated investigation.

We cannot see Ms. Dobrosky's theory fitting within *Halsey* and its progeny. In *Halsey*, police officers fabricated an oral confession, including facts about the crime Mr. Halsey could not have been aware, told the prosecutor Mr. Halsey confessed when he had not, and included details in the fabricated confessions to enhance its credibility to induce the prosecutor to bring charges.[93] The prosecutor charged Mr. Halsey with murder. Later evidence revealed in a reopened investigation cleared Mr. Halsey who then sued the police officers and others for fabrication of evidence. Our Court of Appeals held a stand-alone fabrication-of-evidence claim may be brought under the due process clause of the Fourteenth Amendment when a criminal defendant is convicted at trial where the prosecution used fabricated evidence.[94]

In *Black*, state police and fire inspectors suspected Ms. Black committed arson.[95] A fire inspector prepared an affidavit of probable cause to arrest Ms. Black containing material falsehoods and omissions including, failing to report the fire started in an electrical outlet, failing to report another fire inspector reporting an electrical fire, failing to mention electricians were at

the scene to fix wiring, and failing to mention no one checked the circuit panel, outlet or live wires.[96] Ms. Black retained her own expert who concluded the cause of the fire to be electrical. The expert contacted the County's fire inspector and prosecutor, neither of whom responded. A jury acquitted Ms. Black and she brought a Fourteenth Amendment procedural due process claim for the fabrication of evidence. Our Court of Appeals held an acquitted criminal defendant (rather than the convicted criminal defendant in *Halsey*) may have a stand-alone fabricated evidence claim if there is a reasonable likelihood absent the fabricated evidence the defendant would not have been charged.[97]

Six months ago our Court of Appeals in *Mervilus v. Union County* defined the state of mind necessary to sustain a fabricated evidence claim.[98] Police arrested Mr. Mervilus on robbery and assault charges and other offenses. Mr. Mervilus agreed to take a polygraph test and police selected a polygraph examiner to administer the test with no oversight from the police department and no police policies or procedures governing polygraph tests. The examiner, using questionable methods, concluded Mr. Mervilus lied about his participation in the crime and relayed his conclusion to the prosecutors. The examiner testified at trial to his conclusions even though the examiner knew of an industry report concluding polygraph science is neither valid nor reliable.

A jury convicted Mr. Mervilus who, after successfully overturning his conviction, sued the polygraph examiner and others for fabricating the polygraph evidence and falsely testifying at trial. The district court granted summary judgment in favor of the polygraph examiner, concluding the evidence suggested only the examiner's methods were flawed and the results incorrect but not taken in bad faith. Our Court of Appeals reversed. Relying on *Halsey* and *Black*, our Court of Appeals held Mr. Mervilus must adduce evidence supporting a conclusion the polygraph examiner knew the evidence is incorrect or offered it in bad faith.[99] "Bad faith" to support a fabrication-of-

evidence claim requires a showing the actor "formulated or submitted false evidence willfully, knowingly, or with reckless disregard for its truth."[100] To be actionable, "[a]n individual who furnishes inculpatory evidence while consciously disregarding a substantial risk it is false behaves culpably, heightens the risk of a wrongful conviction, and 'offends some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental.'"[101] Our Court of Appeals vacated summary judgment finding the record showed sufficient evidence the polygraph examiner acted in bad faith in fabricating the polygraph examination.[102]

Unlike the fact patterns presented to our colleagues in *Halsey*, *Black*, and *Mervilus*, Ms. Dobrosky has not pleaded fabricated, knowingly false evidence forwarded to the Bucks County District Attorney caused the criminal charge filed against Ms. Dobrosky—interfering with the custody of a child—or her conviction. Ms. Dobrosky instead swears Social Worker Lometti did not do anything at all—she did no investigation. There is no allegation Social Worker Lometti fabricated evidence and then gave it to the District Attorney for prosecution.

And we do not see how the ***failure*** to investigate creates a "reasonable likelihood without the use of the evidence she would not have been convicted or charged" required by *Halsey* and *Black* to maintain a fabrication-of-evidence claim. The "reasonable likelihood" standard "requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her."[103] Ms. Dobrosky alleges "[i]f [Social Worker Lometti] conducted an investigation, including interviews of the individuals who possessed personal knowledge of the abuse, and obtained relevant available medical evidence, she would have concluded [the] November 1, 2015 child abuse report was indeed 'founded' and that action was warranted to ensure the child's safety and welfare by protecting her from" the child's father.[104]

This is entirely speculative and does not allege a "meaningful connection" between an alleged due process injury and the use of fabricated evidence.

We similarly reject Ms. Dobrosky's allegation Social Worker Lometti suppressed evidence in her efforts to fabricate her conclusion the November 2015 report of abuse is unfounded. Ms. Dobrosky alleges Social Worker Lometti suppressed a recording or transcript of the November 5, 2015 forensic interview because the Commonwealth did not produce it in its "discovery packet" and suppressed a video Ms. Dobrosky made of her daughter.[105] Ms. Dobrosky offers only her conclusion. She pleads no facts in her third attempt at stating a claim to support this allegation other than a bald assertion. Ms. Dobrosky's counsel could have demanded a transcript of the forensic interview and we do not see how Social Worker Lometti suppressed a video Ms. Dobrosky herself made and presumably kept a copy.

We dismiss Ms. Dobrosky's Fourteenth Amendment procedural due process fabrication-of-evidence claim.

### C.  We dismiss the Fourth Amendment malicious prosecution claim.

Ms. Dobrosky also brings a Fourth Amendment malicious prosecution claim under section 1983.[106] To state a claim for malicious prosecution, Ms. Dobrosky must allege "(1) [Social Worker Lometti] initiated a criminal proceeding; (2) the criminal proceeding ended in [Ms. Dobrosky's] favor; (3) [Social Worker Lometti] initiated the proceeding without probable cause; (4) [Social Worker Lometti] acted maliciously or for a purpose other than bringing [Ms. Dobrosky] to justice; and (5) [Ms. Dobrosky] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[107] Police officers may be liable for malicious prosecution if they "conceal or misrepresent material facts" to prosecutors, fail to "disclose exculpatory evidence to prosecutors, mak[e] false or misleading reports to the prosecutor, omi[t] material information

from … reports, or otherwise interfer[e] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."[108]

Ms. Dobrosky fails to state a malicious prosecution claim because she cannot meet the first or third elements. Ms. Dobrosky again does not allege Social Worker Lometti initiated a criminal proceeding or concealed or misrepresented facts to the Bucks County District Attorney causing the Commonwealth to prosecute her. She cannot meet the third element because there is no plausible allegation Social Worker Lometti concealed or misrepresented facts to prosecutors or initiated the proceeding without probable cause. The Commonwealth had probable cause to arrest and prosecute Ms. Dobrosky for interfering with her daughter's custody by fleeing to Florida. She admittedly left the Commonwealth for Florida. Ms. Dobrosky defended the charge by claiming her conduct necessary to protect her child. She never disputed she left the Commonwealth with her daughter. She only argues the defense. There are no plausible allegations tying Social Worker Lometti to the first or third elements of a claim for malicious prosecution. We dismiss Ms. Dobrosky's section 1983 malicious prosecution claim.

## III.   Conclusion

We dismiss Ms. Dobrosky's second amended Complaint against Social Worker Lometti. Ms. Dobrosky again does not plead sufficient facts to state claims plausible on its face for a deprivation of liberty without due process and the denial of the right to familial association violative of the First and Fourteenth Amendments, a deprivation of liberty without due process and denial of a fair trial based on fabricated evidence violative of the Fourteenth Amendment, or malicious prosecution violative of the Fourth Amendment. Ms. Dobrosky has not pleaded civil rights claims against Social Worker Lometti after three attempts. We dismiss her claims against Social Worker Lometti with prejudice.

---

[1] ECF No. 27, Second Amended Complaint ¶ 9. Ms. Dobrosky is an attorney currently suspended from the practice of law in Pennsylvania.

[2] *Id.* ¶ 14.

[3] *Id.* ¶¶ 14–17.

[4] *Id.* ¶¶ 23–24.

[5] *Id.* ¶ 25.

[6] *Id.* ¶ 26.

[7] *Id.*

[8] *Id.* ¶ 27.

[9] *Id.* ¶ 28.

[10] *Id.* ¶¶ 30–31, 36.

[11] *Id.* ¶¶ 33–35.

[12] *Id.* ¶ 37.

[13] *Id.*

[14] *Id.*

[15] *Id.* ¶ 38.

[16] *Id.*

[17] *Id.* ¶ 39, 41.

[18] *Id.* ¶ 41.

[19] *Id.* ¶ 43.

[20] *Id.* ¶¶ 43–44.

[21] *Id.* ¶ 44.

[22] *Id.* ¶¶ 44–48.

[23] *Id.* ¶ 49.

[24] *Id.*¶ 51.

[25] *Id.* ¶ 52.

[26] *Id.*

[27] *Id.* ¶ 53.

[28] *Id.* ¶¶ 54–55.

[29] *Id.* ¶ 56.

[30] *Id.* ¶ 60.

[31] *Id.* ¶ 70.

[32] *Id.* ¶ 71. Under Pennsylvania law, "[a] person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 PA. CONS. STAT. §2904(a). It is a defense to the charge if "the actor believed that his action was necessary to preserve the child from danger to its welfare." *Id.* § 2904(b)(1). It is also a defense to the charge if "the actor is the child's parent or guardian or other lawful custodian and ***is not acting contrary to an order entered by a court of competent jurisdiction***." *Id.* § 2904(b)(3) (emphasis added). Ms. Dobrosky did not defend the charge under this subsection presumably because of the Bucks County July 30, 2015 custody order.

[33] ECF No. 27 ¶¶ 72, 76.

[34] *Id.* ¶¶ 73–75.

[35] *Id.* ¶¶ 67, 78, 79, 97, 116, 122.

[36] *Id.* ¶¶ 81–83.

[37] *Id.*¶ 82.

[38] *Id.* ¶ 83.

[39] *Id.* ¶ 100.

[40] *Id.* ¶¶ 103–104; *Commonwealth v. H.D.*, 217 A.3d 880 (Pa. Super. Ct. 2019).

[41] ECF No. 27 ¶ 105; *Commonwealth v. H.D.*, 247 A.3d 1062 (Pa. 2021).

[42] ECF No. 27 ¶ 106.

[43] Ms. Dobrosky first sued Bucks County Children & Youth Social Services Agency, Lower Makefield Township Police Department, Bucks County Assistant District Attorney William R. Murphy, Detective Lange, and Social Worker Lometti. ECF No. 1. Ms. Dobrosky voluntarily dismissed the Agency and the Lower Makefield Police. ECF No. 18. She filed an amended Complaint asserting civil rights claims against individual defendants Assistant District Attorney Murphy, Detective Lange, and Social Worker Lometti. ECF No. 13. We granted the Defendants' Motions to dismiss, explaining each are immune from challenges to their alleged conduct either under prosecutorial immunity or immunity as a trial witness. ECF Nos. 25, 26. We allowed Ms. Dobrosky to again amend her complaint if she could overcome pleading deficiencies.

[44] ECF No. 27 ¶ 65 (emphasis in original). In her amended Complaint, Ms. Dobrosky alleged Attorney Murphy never produced evidence of Social Worker Lometti's investigation "likely because it did not exist, … [Social Worker Lometti] fabricated it, and lied about it to conceal the lack of her investigation." ECF No. 13 ¶ 100. She now affirmatively alleges an investigation never existed and Social Worker Lometti fabricated its existence.

[45] ECF No. 27 ¶ 49, n. 1 (emphasis in original).

[46] *Id.* ¶ 64.

[47] *Id.* ¶ 66 (emphasis in original).

[48] *Id.* ¶ 67.

[49] *Id.* ¶¶ 92–93 (emphasis in original).

[50] ECF No. 29. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare

recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[51] Social Worker Lometti again asserts absolute and qualified immunities bar Ms. Dobrosky's claims raised in her Motion to dismiss the amended Complaint. ECF No. 29–1 at 4.

[52] ECF No. 30. Ms. Dobrosky asserts a Fourth Amendment malicious prosecution claim in Count III.

[53] Congress in section 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983.

[54] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[55] Our Court of Appeals has not decided whether intimate association claims are based in the First Amendment, the Fourteenth Amendment, or both. *See e.g. Marstolf v. Christie*, 552 F. App'x 149, 152 n. 3 (3d Cir. 2013) (taking no position on whether the right to intimate association stems from the First or Fourteenth Amendments or both but noting the plaintiff framed the claim in terms of substantive due process); *McMillan's v. Dep't of Human Serv. of Pa.*, No. 18-2080, 2018 WL 3957077, *6 n. 42 (E.D. Pa. Aug. 16, 2018) (recognizing decisions from our Court of Appeals and district courts within the Circuit basing intimate association claims on either the First Amendment or Fourteenth Amendment, or both) (collecting cases); *Gardner v. Barry*, No. 10-527, 2010 WL 4853885, at *5 n. 5 (M.D. Pa. Nov. 23, 2010) (recognizing a circuit split on whether the right to intimate association is protected under the First Amendment or Fourteenth Amendment substantive due process) (collecting cases).

[56] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984); *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441–42 (3d Cir. 2000).

[57] *Roberts*, 468 U.S. at 619 (cleaned up).

[58] *Id.* at 617–18.

[59] *Wright v. Whitehall Twp.*, No. 20-2664, 2021 WL 100091, at *8 (E.D. Pa. Jan. 12, 2021) (quoting *Vanderhoff v. City of Nanticoke*, No. 18-1071, 2018 WL 4565673, at *5 (M.D. Pa. Sept. 24, 2018)). *See also Starnes v. Butler Cnty. Court of Common Pleas, 50th Judicial Dist.*, 971 F.3d 416, 431 (3d Cir. 2020) ("[a] plaintiff must allege conduct that interferes 'directly and substantially' with her right to form or maintain that intimate relationship") (citing *Zablocki v. Redhail*, 434 U.S. 374, 387 (1978)).

[60] *Smith v. N.J. Div. of Child Prot. and Permanency*, 723 F. App'x 119, 122 (3d Cir. 2018) (citing *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997)).

[61] *Id.*

[62] *Mammaro v. N.J. Div. of Child Prot. and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–48 (1998)).

[63] *B.S. v. Somerset Cnty.*, 704 F.3d 250, 267 (3d Cir. 2013).

[64] *Id.* at 267–68 (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999)).

[65] ECF No. 27 ¶ 84.

[66] ECF No. 30 at 3, 4.

[67] We question whether we are really back to a challenge to Social Worker Lometti's testimony as a trial witness, conduct for which she is absolutely immune as we explained in our Memorandum dismissing Ms. Dobrosky's amended Complaint. *See* ECF No. 25.

[68] No. 22-2782, 2023 WL 4700642 at *1 (3d Cir. July 24, 2023).

[69] *Id.* at *1.

[70] *Id.* at *4.

[71] *Id.*

[72] *Id.*

[73] *Id.* (citations and footnote omitted).

[74] 704 F.3d 250 (3d Cir. 2013).

[75] *Id.* at 267.

[76] *Id.* at 267–68.

[77] *Id.* at 268.

[78] ECF No. 27 ¶ 116.

[79] *Id.* ¶ 50.

[80] *Id.* ¶ 49, n. 1 (emphasis in original).

[81] ECF No. 25.

[82] Social Worker Lometti asserted immunity under the Eleventh Amendment, qualified immunity, and absolute immunity in his Motion to dismiss the amended Complaint. ECF No. 16. We dismissed the claims as pleaded in the amended Complaint based on Social Worker Lometti's absolute immunity as a trial witness and did not reach assertions of qualified immunity or Eleventh Amendment immunity. We do not reach the immunity issues because we conclude Ms. Dobrosky fails to state a claim against Social Worker Lometti.

[83] ECF No. 27 *compare* ¶ 116 *with* ¶ 122.

[84] *Id.* ¶¶ 122–126.

[85] *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)).

[86] *Halsey*, 750 F.3d at 294 n. 19.

[87] *Dennis v. City of Phila.*, 379 F. Supp. 3d 420, 432 (E.D. Pa. 2019), *aff'd* 19 F.4th 279 (3d Cir. 2021) (quoting *Halsey*, 750 F.3d at 295).

[88] *Black*, 835 F.3d at 369–72.

[89] *Id.* at 371.

[90] *Id.* at 372 (quoting *Halsey*, 750 at 294 n. 19).

[91] ECF No. 27 ¶¶ 91, 99.

[92] *Id.* ¶ 64.

[93] *Halsey*, 750 F.3d at 289.

[94] *Id.* at 294–95.

[95] *Black*, 835 F.3d at 362.

[96] *Id.*

[97] *Id.* at 371.

[98] 73 F.4th 185 (3d Cir. 2023).

[99] *Id.* at 193–94.

[100] *Id.* at 194–95.

[101] *Id.* at 194 (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)).

[102] *Id.* at 195.

[103] *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 at 294 n. 19).

[104] ECF No. 27 ¶ 50.

[105] *Id.* ¶¶ 67, 68.

[106] *Zimmerman v. Corbett*, 873 F.3d 414 (3d Cir. 2017), *cert. denied,* 138 S.Ct. 2623, 201 L.Ed.2d 1027 (2018).

[107] *Id*. at 418 (citing *Halsey*, 750 F.3d at 296–97).

[108] *Thorpe v. City of Phila.*, No. 19–5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).